# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

ROBERT LEE McDONALD, )
)
      Plaintiff, )
)
v. ) Case No. CIV-12-883-HE
)
CAROLYN W. COLVIN,[1] acting )
Commissioner Social Security )
Administration, )
)
      Defendant. )

## REPORT AND RECOMMENDATION

Robert McDonald (Plaintiff) brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of Defendant Acting Commissioner's (Commissioner) final decision denying his applications for disability insurance benefits (DIB) and supplemental security income payments (SSI) under the Social Security Act. United States District Judge Joe Heaton referred the matter for proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (b)(3) and Fed. R. Civ. P. 72(b), Doc. 5, and it is now before the undersigned Magistrate Judge. Having carefully reviewed the administrative record (AR) in conjunction with the arguments and authorities of both parties, the undersigned recommends the Commissioner's decision be reversed and the matter remanded for further

---

[1] Effective February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as Defendant in this action.

proceedings.

I.      **Administrative proceedings.**

To support his July and August 2009 applications seeking DIB and SSI, Plaintiff explained that his mental illness and his back and left shoulder injuries resulted in constant pain, "issues with people," paranoia, the inability to concentrate, and, ultimately, in disability as of October 1, 2005.[2]  AR 165-68, 169-71, 203.  The State agency denied Plaintiff's claims, *id.* at 63-66, 67-71, 78-80, 81-83, and he challenged that determination by requesting a hearing before an administrative law judge (ALJ).  *Id.* at 84-85.

Plaintiff and a vocational expert appeared at the April 2011 administrative hearing, and each was examined by the ALJ and by Plaintiff's attorney.  *Id.* at 29-56.  In his June 2011 hearing decision, the ALJ found Plaintiff retained the ability to perform work available in the national economy and, accordingly, was not disabled within the meaning of the Social Security Act.  *Id.* at 14-23.  Plaintiff requested but was denied review of the ALJ's decision by the Appeals Council, *id.* at 1-6, and he is here seeking judicial review of what is now the Commissioner's final decision.  Doc. 1.

---

[2]     Unless otherwise indicated, quotations in this report are reproduced verbatim.

## II. Determination of disability.

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(b)-(f), 416.920(b)-(f); *see also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing five steps in detail). Under this sequential procedure, Plaintiff bears the initial burden of proving he has one or more severe impairments. 20 C.F.R. §§ 404.1512, 416.912; *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). Then, if Plaintiff makes a prima facie showing that he can no longer engage in prior work activity, the burden of proof shifts to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Turner*, 754 F.2d at 328; *Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir. 1984).

## III. Analysis.

### A. Plaintiff's claims of error.

Though Plaintiff presents several claims of error on judicial review, the undersigned recommends remand because, at step three, the ALJ failed to

3

consider whether Plaintiff was presumptively disabled by a mental impairment that could arguably satisfy the criteria of Listing 12.05C.[3] Accordingly, this report does not address the remaining claims. *See Watkins v. Barnhart*, 350 F. 3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand.").

### B. Standard of review.

The court typically reviews the Commissioner's final decision to determine whether the ALJ's "factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Here, however, the ALJ did not address Listing 12.05C, so [the court] cannot employ the customary review process." *Bland v. Astrue*, 432 F. App'x 719, 722 (10th Cir. 2011).

### C. Listing 12.05C.

The Listing of Impairments "describes, for each of the major body systems impairments that [are] consider[ed] severe enough to prevent an individual from doing any gainful activity...." 20 C.F.R. §§ 404.1525(a), 416.925(a). Among the listed mental impairments is mental retardation. 20 C.F.R. § 404, Subpt. P, App. 1, § 12.05. In order to establish presumptive disability under Listing

---

[3] 20 C.F.R. § 404, Subpt. P, App. 1, § 12.05C.

4

12.05C, a claimant bears the burden of proving he suffers from (1) significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during his developmental period, that is, before age 22;[4] (2) a valid verbal, performance, or full scale IQ of 60 to 70; and (3) an impairment imposing an additional and significant work-related limitation of function. 20 C.F.R. § 404, Subpt. P, App. 1, § 12.05C; *Wall v. Astrue*, 561 F.3d 1048, 1062 (10th Cir. 2009).

### D. The ALJ's relevant findings.

At step two, the ALJ determined Plaintiff was impaired by bilateral flat feet deformity, status post left shoulder dislocation, and paranoid schizophrenia. AR 16. He explicitly found these impairments "have more than a minimal effect on [Plaintiff's] ability to perform work related activities" and are severe. *Id.* He duly addressed at step three whether Plaintiff has "an impairment or combination of impairments that meets or medically equals" the criteria of listings 12.02, 12.03, 12.04, 12.08, and 12.09 and found he did not. *Id.* at 17. Nonetheless, the ALJ made no mention of Listing 12.05C.[5] The ALJ then found

---

[4]    This is the capsule definition for Listing 12.05. *Wall v. Astrue*, 561 F.3d 1048, 1062 (10th Cir. 2009).

[5]    The ALJ addressed, AR 17-18, the disorders considered in the Psychiatric Review Technique (PRT). *Id.* at 333. Nonetheless, Plaintiff did not undergo IQ testing until some nine months after the completion of the PRT. *Id.*
(continued...)

5

at step four that Plaintiff was unable to perform his past relevant work, *id.* at 22, but, at step five, concluded he could make a successful adjustment to other work that exists in significant numbers in the national economy. *Id.* at 23.

### E. The parties' contentions.

#### 1. Plaintiff's opening brief.

According to Plaintiff, "the ALJ completely ignored the listings at section 12.05, and the facts in this case meet listing 12.05C." Doc. 18, at 16.[6] As support, Plaintiff points to evidence which he contends satisfies 12.05C's requirements: (1) the results of his IQ testing showing a verbal IQ of 80, a performance IQ of 70, and a full scale IQ of 74, AR 524, and (2) the fact the ALJ found he had another severe impairment at step two. Doc. 18, at 16. Plaintiff submits "[t]he ALJ simply ignored the evidence showing that the listing was met" and, "[b]ecause the facts show that the listing is met," he "asks the court to remand this case for the immediate payment of benefits." *Id.* at 17.

#### 2. The Commissioner's response.

The Commissioner, on the other hand, submits Plaintiff has not shown the

---

[5](...continued)
at 521-25. A copy of the report containing the testing results was handed to the ALJ during the administrative hearing. *Id.* at 33, 39-40.

[6]    Page citations to the parties' briefs reflect this Court's CMECF pagination.

ALJ should have considered the applicability of Listing 12.05C because (1) Plaintiff has not pointed to evidence indicating, as required by the capsule definition for Listing 12.05, deficits in his adaptive functioning before age 22; (2) the psychologist who performed and interpreted the IQ testing assessed Plaintiff's IQ as borderline, and a diagnosis of borderline intellectual functioning precludes a finding of mental retardation under the capsule requirement; and (3) the ALJ is entitled to rely on Plaintiff's attorney to structure the case, and, here, the attorney never alleged mental retardation. Doc. 20, at 14-17.

### 3.   Plaintiff's reply brief.

Because the ALJ did not explicitly consider Listing 12.05C and its required criteria, Plaintiff contends the Commissioner is providing improper post hoc justification in alleging Plaintiff has not shown that he suffers from a mental condition which meets the capsule definition of Listing 12.05. Doc. 21, at 2. Regardless, Plaintiff points to evidence that he had to repeat third grade and attend special education classes throughout most of his formal education as well as to evidence of his life-long difficulty in interacting with people and of his consistently low-paying jobs. *Id.* at 2-3. Plaintiff further challenges the legal underpinnings of the Commissioner's arguments, maintaining, first, that the Commissioner has failed to cite legal authority for her claim that a finding of mental retardation is precluded by a diagnosis of borderline intellectual

7

functioning and, second, that the authority she did cite with regard to Plaintiff's counsel's failure to raise Listing 12.05C, is factually distinguishable. *Id.* at 3-4.

## F. The ALJ erred by failing to consider Listing 12.05C.

### 1. Evidence implicating Listing 12.05C.

#### a. Evidence of subaverage general intellectual functioning with deficits in adaptive functioning initially manifested before age 22.

Plaintiff told Dr. Keith Green, a consultative examining psychologist, he can work, but he loses jobs. AR 326. He explained that in addition to becoming paranoid, he "'can't remember what they tell [him] to do, get[s] mad and punch[es] them and lose[s his] job.'" *Id.* When Dr. Green asked him when he thought he had become disabled, he stated, "'I've had problems, issues with people, my whole life.'" *Id.* Plaintiff acknowledged that prior to dropping out of school during the eighth grade due to family problems, "he had been in Special Education throughout school for all subjects." *Id.* at 327. Dr. Green estimated Plaintiff fell within the low average to borderline range of general mental ability and, based on the results of a mental status examination, diagnosed a cognitive disorder. *Id.* at 328-30.

When questioned at the administrative hearing, Plaintiff testified he attended school through eighth grade – repeating third grade – and was in special education classes. *Id.* at 38. He testified to difficulties with his

8

supervisor on his last rough necking job due, in part, to his inability to remember the supervisor's instructions. *Id.* at 46.

Around nine months after his consultative psychological examination, Plaintiff saw Dr. Green once again, this time for an evaluation of the efficacy of rehabilitation services. *Id.* at 521-25. On WAIS-III testing, Dr. Green reported Plaintiff "obtained Verbal, Performance and Full-Scale IQs of 80, 70, and 74, respectively, results which place him within the Borderline range of current intellectual functioning, or at the 4th percentile with reference to the general U.S. adult population." *Id.* at 524. Dr. Green noted these scores together with certain scaled scores "are features of the psychometric data that are often associated with learning disabilities." *Id.* According to Dr. Green, "[o]verall, [Plaintiff] appeared to put forth his best efforts and, thus, obtained results are considered to be valid." *Id.* Dr. Green's diagnostic impression included Borderline Intellectual Functioning. *Id.* at 525.

### b. Evidence of a valid verbal, performance, or full scale IQ of 60 through 70.

According to Dr. Green, Plaintiff has a valid performance IQ of 70. *Id.* at 524.

### c. Evidence of a physical or other mental impairment imposing an additional and significant work-related limitation of function.

The ALJ found at step two that Plaintiff has several severe impairments – two physical and one mental – which have more than a minimal impact on his ability to perform work-related activities. *Id.* at 16. At step four, he concluded Plaintiff was unable to perform his past relevant work. *Id.* at 22. Based on these findings, there is evidence that Plaintiff has a physical or other mental impairment causing an additional and significant work-related limitation of function. *Hinkle v. Apfel*, 132 F.3d 1349, 1352-53 (10th Cir. 1997).

### 2. The evidence required the ALJ to address Listing 12.05C.

Though alerted to evidence implicating Plaintiff's intellectual functioning, AR 21, 33-35, and to alleged deficits in adaptive functioning initially manifesting before age 22, *id.* at 38-39, the ALJ did not explicitly consider whether Plaintiff met the criteria of Listing 12.05C at step three. *Id.* at 17-18. According to the Commissioner, "Plaintiff has not shown that the ALJ *should* have considered the applicability of Listing 12.05(c)." Doc. 20, at 16 (emphasis added).

Specifically, the Commissioner, without legal support, argues Plaintiff "has not shown that he met the capsule requirement of listing 12.05" by demonstrating "significantly subaverage general intellectual functioning with

deficits in adaptive functioning that initially manifested before age 22." *Id.* at 15 (quoting 20 C.F.R. § 404, Subpt. P, App. 1, § 12.05). Nonetheless, "[i]f [Plaintiff] does not meet the capsule definition, then the ALJ must make that determination in the first instance." *Peck v. Barnhart*, 214 F. App'x 730, 736 (10th Cir. 2006). Here, the ALJ made *no* findings regarding Listing 12.05C. And, while the Commissioner points to the fact that Plaintiff obtained a GED despite dropping out of school in eighth grade for family reasons and that he reported nothing unusual about his birth or infancy, Doc. 20, at 15, "these facts may cut against a finding that [Plaintiff] satisfied the capsule definition, [but] they by no means conclusively resolve the question one way or the other." *Peck*, 214 F. App'x at 736.

The same result holds true with regard to the Commissioner's claim that "[a] diagnosis of borderline intellectual functioning . . . precludes a finding of mental retardation." Doc. 20, at 15. The Commissioner fails, once again, to support this seemingly case-dispositive legal claim with any legal authority. Rather, the Commissioner submits that Dr. Green "assessed Plaintiff's IQ as borderline" and, under the DSM-IV,[7] "[w]hile mental retardation denotes an IQ of 70 or below, borderline intellectual functioning denotes an IQ in the 71-84

---

[7] Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (4th ed., Text Revision, 2000).

range." *Id.* Here, where the ALJ never considered whether Plaintiff met Listing 12.05C, the ALJ – not the court – should first consider Dr. Green's narrative explanations of the validity of the results of Plaintiff's mental status examination and IQ testing. *Peck*, 214 F. App'x at 736.

Neither is the ALJ's failure to consider Listing 12.05C obviated by the fact that Plaintiff's counsel did not denominate limitations in intellectual functioning as "mental retardation" at the administrative hearing. The Commissioner claims otherwise, relying on *Wall,* 561 F.3d at 1062. Unlike in *Wall*, however, where the ALJ's failure to consider Listing 12.05C was "unsurprising" in light of the fact that the claimant did not allege mental disability at the administrative hearing, *id.*, Plaintiff's intellectual functioning was plainly brought to the ALJ's attention at the hearing in this case as were the results of testing done by Dr. Green. AR 29-56. And, because a review of the hearing transcript shows the ALJ did not rely on counsel to identify each of the specific listings he ultimately addressed in his decision, *id.* at 17-18, the proposition that counsel was somehow required to do so with regard to Listing 12.05C is untenable.

### 3. A remand for further proceedings is required.

Plaintiff asks the court to remand this case for the immediate award of benefits "[b]ecause the facts show that [Listing 12.05C] is met." Doc. 18, at 17.

This is not so – the facts surrounding the satisfaction of the capsule definition are subject to varying interpretations. "[T]he ALJ made no findings regarding Listing 12.05(C) and [the court] must remand [for further proceedings] to afford the ALJ that opportunity." *Peck*, 214 F. App'x at 737.

## IV. Recommendation and notice of right to object.

For the reasons stated, the undersigned recommends the Commissioner's decision be reversed and the matter remanded for further proceedings.

The parties are advised of their right to object to this Report and Recommendation by December 9, 2013, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The parties are further advised that failure to make timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein. *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 20th day of November, 2013.

_____
SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE